UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REMON MCDANIEL,<br>    Petitioner,<br>    v.<br>M. SPEARMAN,<br>    Respondent. | Case No. 18-cv-04656-SI<br><br>**ORDER OF DISMISSAL**<br>Re: Dkt. No. 12 |

Remon McDaniel filed this *pro se* action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent has moved to dismiss the habeas petition as untimely. The dispositive issue is whether McDaniel had a mental impairment that supports equitable tolling of the limitations period. The court concludes that he does not, and therefore dismisses the petition as barred by the habeas statute of limitations.

**BACKGROUND**

McDaniel was convicted in Alameda County Superior Court in 2014 of murder and possession of a firearm by a felon. The jury found that McDaniel had used and discharged a firearm in the commission of the murder and inflicted great bodily injury. On April 11, 2014, McDaniel was sentenced to 53 years to life in state prison.

He appealed. The California Court of Appeal affirmed the conviction on December 22, 2016. The California Supreme Court summarily denied his petition for review on March 22, 2017. Docket No. 12 at 58.

McDaniel's federal petition for writ of habeas corpus has a proof of service dated August 27, 2018, and was stamped "filed" at the courthouse on August 31, 2018. Under the prisoner mailbox

rule, a petition is deemed filed as of the date on which the prisoner-petitioner gives it to prison officials to mail to the court. *See Stillman v. Lamarque*, 319 F.3d 1199, 1201 (9th Cir. 2003). For present purposes, the court accepts that McDaniel gave the petition to prison officials to mail on August 27, 2018, and deems his federal petition filed as of that date.[1]

**DISCUSSION**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposed a statute of limitations on petitions for a writ of habeas corpus filed by state prisoners. Petitions filed by prisoners challenging noncapital state convictions or sentences must be filed within one year of the latest of the date on which: (A) the judgment became final after the conclusion of direct review or the time has passed for seeking direct review; (B) an impediment to filing an application created by unconstitutional state action was removed, if such action prevented petitioner from filing; (C) the constitutional right asserted was recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (D) the factual predicate of the claim could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1).

Here, the limitations period began on the ordinary date, when the judgment became final upon "the conclusion of direct review." 28 U.S.C. § 2244(d)(1)(A). "Direct review" includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition. *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999); *Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002) (where petitioner did not file petition for certiorari, his conviction became final 90 days after the California Supreme Court denied review). McDaniel's petition for review was denied by the California

---

[1] On July 25, 2018 – about a month before filing his petition -- McDaniel sent to the court a letter stating that he had just learned that he had missed the habeas deadline. Docket No. 1. That letter does not count for purposes of calculating the date on which the federal petition was filed because the letter was not a petition for writ of habeas corpus. Even liberal construction cannot convert that letter into a petition because the letter does not identify any respondent, does not mention the violation of any constitutional right, and does not provide any information about the conviction or other decision that is to be challenged.

2

Supreme Court on March 22, 2017, and he had ninety days from that date to file a petition for writ of certiorari in the U.S. Supreme Court. He did not file a petition for writ of certiorari. His conviction therefore became final on June 20, 2017, when the time for him to file a petition for writ of certiorari expired. McDaniel's presumptive federal habeas deadline was June 20, 2018, one year from that date.

The one-year limitations period will be tolled for the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). McDaniel is not entitled to any statutory tolling under this provision because he did not file any habeas petitions or other petitions for collateral relief in the state courts.

The one-year limitations period can be equitably tolled because § 2244(d) is not jurisdictional. *Holland v. Florida*, 560 U.S. 631, 645 (2010). A petitioner seeking equitable tolling bears the burden of establishing: "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

McDaniel urges that he is entitled to equitable tolling for his depression and the side effects of medications he takes for that depression. He states that the condition and medications caused forgetfulness, confusion, and "fuzzy thinking." Docket No. 1 at 1. McDaniel is not particularly clear as to whether he once knew and then forgot the habeas filing deadline, simply never knew the deadline until shortly before filing the petition, or always mistakenly thought it was a year later than it actually was. In a July 25, 2018, letter to the court, McDaniel states that he "just found out" that his petition "was due 3 weeks ago and I thought it was next year." Docket No. 1 at 1. In that same letter he states that he missed the deadline due to medication he had been taking for 7-1/2 years: "the side effects state I have fuzzy thinking, confusion and more." *Id.*; *see also id.* at 2 (medication consent form that lists the side effects of psychotropic medications including the Paxil and Remeron prescribed for his depression mentions "'fuzzy thinking'" and "confusion" as potential side effects). In his opposition to the motion to dismiss, McDaniel states that he "suffer[s] confusion, fuzzy thinking" as side effects from his medications that "hinder his ability to comply with filing

3

deadlines." Docket No. 14 at 1-2; *see also id.* at 2 (medication "affects his ability to comprehend and forget at times"). Finally, in a February 21, 2019 letter, McDaniel again refers to the medications and states that he "seem[s] to forget things a lot and [] can't help that [his] mind gets slow," and that he "forgot to file" his petition "by 2 months." Docket No. 18 at 1.

Respondent contends that McDaniel does not show that he had an impairment that caused him to be unable to meet the habeas deadline and that he does not show that he exercised diligence in attempting to meet the filing deadline. Docket No. 17. The court agrees.

Eligibility for equitable tolling due to mental impairment requires the petitioner to meet a two-part test:

> (1) *First*, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control by demonstrating the impairment was so severe that either
>
> > (a) petitioner was unable rationally or factually to personally understand the need to timely file, or
> >
> > (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.
>
> (2) *Second*, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.

*Bills v. Clark*, 628 F.3d 1092, 1099-1100 (9th Cir. 2010) (citation and footnote omitted). In practice, to evaluate whether a petitioner is entitled to equitable tolling due to mental impairment, the district court must: (1) find the petitioner has made a nonfrivolous showing that he had a severe mental impairment during the filing period that would entitle him to an evidentiary hearing; (2) determine, after considering the record, whether the petitioner satisfied his burden to show that he was in fact mentally impaired; (3) determine whether the petitioner's mental impairment made it impossible to timely file on his own; and (4) consider whether the circumstances demonstrate the petitioner was otherwise diligent in attempting to comply with the filing requirements. *Id.* at 1100-01.

As a preliminary matter, the court decides that an evidentiary hearing is not required in this case to determine whether to allow equitable tolling because the pertinent records have been submitted by the parties. *See Orthel v. Yates*, 795 F.3d 935, 939-40 (9th Cir. 2015) (upholding

denial of equitable tolling without evidentiary hearing based on review of voluminous mental health and prison records submitted by respondent); *Roberts v. Marshall*, 627 F.3d 768, 773 (9th Cir. 2010) (finding no equitable tolling for mental impairment based on review of records without conducting evidentiary hearing). Respondent filed McDaniel's mental health records for the relevant time period. Docket No. 17 at 5-76. Although McDaniel's mental health records are only about 70 pages in length, and are far short of the voluminous record in *Orthel*, the brevity of the record here appears to be due to the relatively short time period in question as well as the fact that McDaniel's mental illness was not severe. The *Bills* equitable tolling analysis can be conducted without an evidentiary hearing here because the record is amply developed to allow the court to make a determination based on the totality of circumstances. *See Orthel*, 795 F.3d at 940.

The mental health records show that McDaniel was diagnosed with depression several years ago and was taking the medications Remeron (also known as mirtazapine) and Paxil (also known as paroxetine) during the relevant time period. The generic "statewide psychotropic medication consent form" signed by McDaniel on February 28, 2018, lists side effects of psychotropic medications, including "fuzzy thinking" and confusion. Docket No. 17 at 8.[2] But merely determining that a petitioner has a mental illness and takes medications that may have side effects affecting his cognition does not fully address the *Bills* factors. When one considers other information in the records, it becomes quite evident that McDaniel was not experiencing a substantial mental impairment that impeded timely filing.

---

[2] Interestingly, a less generic psychotropic medication consent form in use a year earlier provides more particularized information about the specific class of medications prescribed to McDaniel and indicates that "fuzzy thinking" and a loss of concentration would not be expected as side effects from the antidepressants McDaniel was prescribed. The "statewide psychotropic medication consent form" signed by McDaniel on March 1, 2017, lists the side effects separately for different types of psychotropic medications -- i.e., one list for antipsychotics, another list for antidepressants, a third list for mood stabilizers, and a fourth list for other medications -- unlike the single list of potential side effects for all psychotropic medications on the form used on February 28, 2018. On the March 1, 2017, form, "fuzzy thinking" and confusion are listed as possible side effects for mood stabilizers but not for antidepressants. Docket No. 17 at 9-10. That same form also states that one of the reasons antidepressants might be prescribed was to treat a loss of concentration. *Id.* at 10 ("Antidepressant medications are useful because they have been found to be effective in treating depression and its associated symptoms including . . . loss of concentration.").

5

McDaniel was in the CCCMS level of care, which reflects the lowest level of mental health care in the California prison system (as opposed to, for example, an inmate in a mental health crisis bed).[3] His CCCMS status indicates that his symptoms were under control or in remission as a result of treatment. An evaluation on June 27, 2018 (apparently done due to his transfer to a new prison) determined that he did not need to be at a higher level of care. Docket No. 17 at 50.

Psychiatrists made notes after seeing McDaniel from time to time. In those notes, the doctors mention that McDaniel reported that he was experiencing no side effects from his medications (noted as "No SE on meds") during visits on March 1, May 10, July 31, October 4, October 11, and December 18 in 2017; and on February 28 and April 23 in 2018. Docket No. 17 at 14, 15, 17, 18, 20-22. The doctors consistently noted that: McDaniel's attire and hygiene were appropriate; he was focused and attentive; and his thoughts were normal or clear, linear, and goal-directed, with no outward signs of distress or psychosis. *See* Docket No. 17, *passim*.

The first mention of complaints of confusion or fuzzy thinking did not occur until after McDaniel realized he had missed the statute of limitations deadline. On August 31, 2018, McDaniel stated to a psychiatrist during a visit: "I messed up one time. 'I was confused . . . my thinking was

---

[3] California prisoners receive mental health care in a system that provides four levels of mental health care.

> The Correctional Clinical Case Management System (CCCMS) provides mental health services to seriously mentally ill inmates with "stable functioning in the general population, Administrative Segregation Unit (ASU) or Security Housing Unit (SHU)" whose mental health symptoms are under control or in "partial remission as a result of treatment." . . . The remaining three levels of mental health care are for seriously mentally ill inmates who, due to their mental illness, are unable to function in the general prison population. The Enhanced Outpatient Program (EOP) is for inmates with "acute onset or significant decompensation of a serious mental disorder." EOP programs are located in designated living units at "hub institution[s]." . . . Mental Health Crisis Beds (MHCBs) are for mentally ill inmates in psychiatric crisis or in need of stabilization pending transfer either to an inpatient hospital setting or a lower level of care. MHCBs are generally licensed inpatient units in correctional treatment centers or other licensed facilities. Stays in MHCBs are limited to not more than ten days. Finally, several inpatient hospital programs are available . . . [and] are operated by the Department of State Hospitals (DSH). Some of those programs are on the grounds of state prisons, while others are in existing state hospitals.

*Coleman v. Brown*, 28 F. Supp. 3d 1068, 1074–75 (E.D. Cal. 2014) (footnotes and citations omitted).

6

off and I was just confused.' Pt. reported he misunderstood the tower officer and his mistake resulted" in a [rule violation report]." Docket No. 17 at 28 (ellipses in original). On that same date, the psychiatrist noted that McDaniel was appropriately groomed, was cooperative, had "linear and goal directed" thought process and "adequate" cognition. *Id.* at 29. Later, on September 26, 2018, McDaniel reported: "'I forgot the date for my legal work, it's because I'm on meds, I get fuzzy.'" Docket No. 17 at 12; *see also id.* at 11 (November 19, 2018, note stating that McDaniel reported: "I still keep forgotting the date for my legal work, it's because I'm on meds, I get fuzzy.'" (errors in source)). These statements occurred after McDaniel had recognized in a July 25, 2018, letter to the court that he had missed the statute of limitations deadline. The September and November statements also occurred after the court issued an order indicating the petition appeared untimely. Docket No. 11. The statements also occurred after McDaniel was transferred to a new prison and learned of the missed deadline. Docket No. 17 at 49 (McDaniel was seen on June 27, 2018 at High Desert State Prison after being transferred due to rule violation and was last seen at Solano prison on April 23, 2018); *id.* at 61 (McDaniel was transferred after having been found with cellphones). The circumstances suggest a post hoc attempt to rationalize a missed deadline rather than the existence of symptoms during the limitations period. In any event, the fuzzy thinking, forgetfulness, and confusion that McDaniel reported to his doctors were not significant enough to cause the doctors to change McDaniel's antidepressant medication regimen. This weighs against finding a substantial mental impairment.

After McDaniel received a rule violation report for possession of marijuana, he was evaluated by a licensed clinical social worker on March 7, 2018, to determine whether he needed assistance at the disciplinary hearing. Docket No. 17 at 34. He was "assessed to have full capacity to participate in the hearing. He is able to name the charge against him, he understands the potential penalties, is clear on the roles of participants in the hearing, and appears able to ask clarifying questions and advocate for himself." Docket No. 17 at 34. McDaniel's ability to defend himself against the disciplinary charge tends to indicate that he did not have a substantial mental impairment.

McDaniel also engaged in activities that seriously undermine the notion that he had a substantial mental impairment. First, he was a representative on the Men's Advisory Council.

7

Docket No. 17 at 14. Inmates elect the representatives on the Men's Advisory Council, which functions as an inmate advisory group to advise and communicate with the warden and other staff about matters of concern to the inmate general population. Cal. Code Regs. tit. 15, § 3230. His position on the Men's Advisory Council cuts against a finding that he was substantially mentally impaired. McDaniel also was trying to get his GED. Docket No. 17 at 14. He took classes and attended programs such as a restorative justice program he enjoyed; he also was a participator and then a facilitator for a self-help group on "thinking errors." *Id.* at 26, 32, 33. Although he did not have a paying job, he volunteered as a porter in his building. *Id.* at 31. He read books to occupy his time. *Id.* at 37; *id.* at 61 (7/23/18 note that McDaniel spends "most of his time reading and hopes to get into college classes"). His educational efforts, self-improvement efforts, and volunteer job cut against a finding that he was substantially mentally impaired as a result of the depression or medications taken therefor.

McDaniel fails to carry his burden to show "'that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 560 U.S. at 649. This case is rather like two cases in which the Ninth Circuit determined the petitioner was not entitled to equitable tolling because, despite mental illness, the petitioner functioned at a reasonably normal level. In *Roberts v. Marshall,* 627 F.3d at 770, equitable tolling was not warranted because the petitioner's mental health records showed that, although he was medicated for severe psychotic depression disorder, he had normal mental functions; his appearance, behavior, mood, speech, appetite, sleep and affect were within normal limits; he was not delusional; and he had normal insight and judgment. In *Orthel*, 795 F.3d at 941, the Ninth Circuit affirmed the dismissal of a petition where substantial evidence showed that, despite fluctuations in his mental health, the petitioner possessed sufficient competence and capability in the year following the date on which the state court judgment became final as well as sufficient competence during much of the eleven-year span between finality of the state court judgment and the filing of his federal petition. As in those cases, there is evidence that McDaniel had mental health problems, but not mental health problems severe enough to show extraordinary circumstances for equitable tolling.

McDaniel's mental health records show that, despite his mental health issues, he possessed sufficient competence in 2017 and 2018 to understand the need to timely file a federal petition and to be able to prepare and file such a petition. His cognitive abilities were at least normal during the time; he never required more than the CCCMS level of care; he had a volunteer job as a porter; he took educational and other self-improvement classes; he was elected by other inmates to represent their interests; and he demonstrated an understanding of the prison disciplinary process. There is insufficient evidence that his depression and occasional confusion and forgetfulness impaired his understanding or ability to prepare and file a federal petition on time. McDaniel also presents no evidence of any diligence in pursuing his claims: the first evidence of any "diligence" was when he wrote to this court in late July 2018, but by then he was already a month past the filing deadline. McDaniel does not show that he is entitled to equitable tolling of the statute of limitations for a mental impairment.

In summary, McDaniel failed to file his federal habeas petition before the statute of limitations period expired. He is not entitled to any statutory tolling or equitable tolling. The petition in this action was filed on August 27, 2018, more than two months after the limitations period expired on June 20, 2018. The petition must be dismissed because it is untimely.

A certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). This is not a case in which "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

///

## CONCLUSION

For the foregoing reasons, respondent's motion to dismiss the petition is GRANTED. Docket No. 12. The petition is dismissed because it was not filed before the expiration of the habeas statute of limitations period. The clerk shall close the file.

**IT IS SO ORDERED**.

Dated: May 22, 2019

SUSAN ILLSTON
United States District Judge